268 So.2d 578 (1972)
James Edward ROBERTS, Appellant,
v.
The STATE of Florida, Appellee.
No. 70-840.
District Court of Appeal of Florida, Third District.
November 7, 1972.
*579 Phillip A. Hubbart, Public Defender and Bennett H. Brummer, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Joel D. Rosenblatt, Asst. Atty. Gen., for appellee.
Before PEARSON and CHARLES CARROLL, JJ., and HOWELL, CHARLES COOK, Jr., Associate Judge.
HOWELL, CHARLES COOK, Jr., Associate Judge.
In the early evening hours of July 14, 1964, the victim was ravished by an assailant whom she could not identify but whose latent fingerprints were found on a kitchen doorjamb, a cigarette lighter on her bed, and upon a windowsill in the front bedroom of the home. A palm print was similarly found on the premises. It and the named fingerprints (some other unidentifiable ones were found) perfectly corresponded with those of James Edward Roberts, the appellant here.
Accordingly the jury, on his ensuing trial, convicted Roberts of the crime of rape as charged in the indictment and he was subsequently adjudged guilty and sentenced to life imprisonment; from which judgment and sentence the instant appeal was launched.
The sole and slender reed on which he leans is "that the State failed to establish that the defendant and the assailant in this case were one and the same person."
But what of the prints?
Our own Supreme Court, in Anderson v. State, Fla., 1970, 241 So.2d 390, 393, 394, in discussing palm prints, expressed the view that they "are just as reliable and accurate as fingerprints"; and referred with approbation to the "many decisions in other states ... that the correspondence of palm prints or bare hand marks found at the scene of the crime with those of the accused is admissible in evidence to prove the latter's identity." (Emphasis ours).
Significant among fingerprint "decisions in other states" is Hervey v. People of the State of Colorado, Colo., 1972, 495 P.2d 204, 206; where "the prosecution's case against the defendant hinged on a fingerprint of the defendant which was discovered on a wet Seven-Up bottle. The Seven-Up bottle was found under some tires in the gas station, a short distance from where the victim was found. Expert witnesses were of the opinion that the print on the bottle was not more than twenty-four hours old,[1] but admitted that their opinion was dependent upon the kind or type of liquid that the bottle was in at the time it was found. Testimony also established that the investigators made no effort to determine what type of liquid surrounded the defendant's fingerprint." The defendant's first degree murder conviction was affirmed although, as here, he "took the stand and denied being in the filling station on the day the murder occurred"; and "at trial, no witnesses tied the defendant to the scene of the crime."
The meat of the opinion seems to be:
"The defendant asserts that the trial court erred in overruling his motions for judgment of acquittal, because the evidence against him was insufficient to sustain a conviction. Fingerprints warrant a conviction when the fingerprints clearly and unequivocally establish that an accused committed the crime. To satisfy the requirements of proof in a circumstantial case, the fingerprints which correspond to those of the accused must be found in the place where the crime was committed under such circumstances as to rule out the possibility that *580 they could have been impressed at a time other than the time when the crime was committed. Silva v. People, 170 Colo. 152, 459 P.2d 285 (1969); accord, State v. Tew, 234 N.C. 612, 68 S.E.2d 291 (1951). See also, 28 A.L.R. 2d 1149-1157. The determination of whether the circumstances satisfy the general rule is a factual matter to be decided by the jury. Silva v. People, supra. In this case, the jury returned a verdict of guilty and was obviously convinced that the fingerprints were impressed at the time the alleged crime was committed. Under these circumstances, the defendant's motion for a judgment of acquittal was properly denied."
Consider, too, if you please, the triple circumstances in the case at bar that this crime occurred in the complaining witness' private home, as distinguished from a place accessible to the public; that she did not know, had never seen the defendant before, nor had he ever been in her home; and that no plausible theory whatever exists for the presence of his prints, of such recent vintage, there, saving his bent on the mischief he actually accomplished  thus our requirement implicit in Tirko v. State, Fla.App. 3, 1962, 138 So.2d 388, 389, that "the circumstances must be such that the print could have been made only at the time the crime was committed", is quite satisfied.[2]
From the human standpoint it is not difficult to perceive that Mr. Roberts would invoke the thought of William Hazlitt in his "On Going a Journey": "Oh! it is great to shake off the trammels of the world and of public opinion  to lose our importunate, tormenting, everlasting personal identity and become the creature of the moment, clear of all ties ..."
From the legal standpoint, however, appellant's "personal identity" as the perpetrator of the subject crime has been fixed by the jury and approved by the trial judge; whose judgment, therefore, is
Affirmed.
NOTES
[1] Here the evidence was that Roberts' were "fairly fresh".
[2] Consequently it is deemed appropriate to consider McCargo v. State, 1968, 3 Md. App. 646, 241 A.2d 161, 165: "In the instant case the fingerprints of the appellant were impressed on two cabinets on the premises. From this evidence the trial court could properly find that the appellant had been at the scene of the crime." See, also, State v. Helms, N.C., 1940, 218 N.C. 592, 12 S.E.2d 243, 245; "... the evidence of fingerprint identification was properly admitted, and is sufficient to take the case to the jury."